Walter F. KIGHTLY, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–1410.

United States Court of Veterans Appeals.

Feb. 8, 1994.

As Amended Feb. 25, 1994.

---

Walter F. Kightly, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Susan A. Wuchinich, Washington, DC, were on the pleadings, for appellee.

Before KRAMER, HOLDAWAY, and IVERS, Judges.

KRAMER, Judge:

Appellant, Walter F. Kightly, appeals the July 24, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which determined that new and material evidence had

not been submitted to reopen appellant's claims for entitlement to service connection for right shoulder and lumbar spine disabilities. This Court has jurisdiction under 38 U.S.C.A. § 7252(a) (West 1991). Because appellant has presented new and material evidence with regard to his right shoulder and lumbar spine disabilities since the BVA's final disallowance of his claims in June 1988, this Court vacates the July 24, 1992, BVA decision and remands the matter for proceedings consistent with this opinion.

## I. Factual Background

Appellant served on active duty in the United States Air Force from January 1952 to February 1962. R. at 4, 12, 13. Appellant's 1953 service medical records indicate that on January 15, 1953, he "was blown off a B–36 wing by a gust of wind and fell striking his head and *[both] shoulders* on the pavement below." R. at 19 (emphasis added); R. at 22. X-rays were taken at the time of the accident of appellant's skull, pelvis, and left shoulder only. R. at 21, 37. He was diagnosed with simple fractures of the occipital and basal skull, and of the left clavicle, with no artery or nerve involvement. R. at 22.

Medical entries document appellant's complaints of recurrent low back pain in 1953 on March 31 (R. at 24), April 10, 20, and 29 (R. at 25), and appellant's receipt of physical therapy from April 20 to May 15 involving "heat to lumbar-sacral area" and "posture training and exercises" (R. at 26). A complaint of low back pain is again recorded on June 3, 1953, with the notation: "[Appellant] [a]grees that his symptoms are probably on a psychosomatic basis. Wants to see Psychiatrist." R. at 27. A subsequent psychiatry consult on June 10, 1953, suggested a functional etiology due to job dissatisfaction and recommended job reassignment. R. at 29–30. A neurological consult investigating appellant's chronic low grade headaches was conducted on January 13, 1954; while finding him "entirely normal," the physician noted: "He also states that at the age of 5 or 6 he had poliomyelitis with a brief paralysis of both lower extremities and he states this has left his back weakened and so he has to avoid hard lifting." R. at 33.

Complaints of lower back pain are again recorded on October 11, 1954 (R. at 35), and November 12, 1954 (R. at 36). An x-ray of the lumbosacral spine was performed on the latter date with a finding of "No Significant Abnormality." R. at 36, 37. A medical entry of September 29, 1955, contains the notation: "[S]trained [his] back yesterday. Complains [of] pain ... [at] D12–L2. Is able to touch [his] toes without diffic[ulty]. No objective findings." R. at 38. On a January 16, 1956, "Report of Medical History," appellant stated: "I feel that my health is good to date." R. at 39.

An April 17, 1959, medical entry notes: "Fell 8′ off 'stand'. Hit back." R. at 44. A medical entry on April 22, 1959, reports: "Mid-thoracic pain—non[-]rad[iating], subsequent to trauma. Exam[ination]: Point tenderness over area T10–12." R. at 44. A radiographic report of April 27, 1959, states: "[L]umbar & thoracic spine reveal no abnormalities." R. at 45. Appellant's "Report of Medical History" and "Report of Medical Examination," both dated January 9, 1962, and performed in conjunction with his separation, record "No comp[lications], No seq[uelae]" as a result of the 1953 accident. R. at 49, 51.

A VA "Certificate of Attending Physician," signed by Dr. Tyler, D.C., indicates treatment of appellant on August 20, 1970, and a diagnosis of "myofibrositis of lumbosacral area." R. at 54. (Myofibrositis is inflammation of connective tissue demarcating a small bundle or cluster of skeletal muscle fibers. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 613, 1090, 1259 (27th ed. 1988).)

A VA disability evaluation examination conducted on January 4, 1974, included a radiographic report on appellant's left and right shoulders which relates post-traumatic changes in the left shoulder, but is silent as to any findings regarding the right shoulder. R. at 65. The examination also included an orthopedic consult which noted that the "appellant freely and painlessly performed a full normal range of shoulder motion in all directions, and this included meeting palms overhead." R. at 66. A statement of Dr. Culver, D.C., reports that on June 12, 1978,

the appellant "presented to my office complaining of low back pain radiating into the left leg ... [which appellant attributed to] falling 21 feet from the wing of a B–36 while he was in the Air Force. [Appellant] was treated ... from June 12, 1978, to March 10, 1980." R. at 75. Dr. Tyler, D.C., states that appellant "first came to my office in the latter part of 1969 or early 1970" and that his "structural problems seemed based upon an accident he suffered while in the services." R. at 76.

The Regional Office (RO) denied service connection for a back injury in a November 24, 1986, rating decision. R. at 77. On his VA form 1–9, appellant stated, "My right shoulder hurts all the time and is now affecting my neck." R. at 88. At a personal hearing on July 7, 1987, appellant's representative amended "the issues to include service connection for ... thoracic lumbar spine condition secondary to a fall." R. at 91. Appellant testified that he had fractured his right clavicle in service and that he had suffered back pain for years since the 1959 fall. R. at 91, 93.

A radiographic report of appellant's lumbosacral spine and of both shoulders performed in conjunction with a VA disability evaluation examination of August 17, 1987, made the following findings: "Degenerative disc disease ... at the level of L3–4, L4–5 and L5–S1. There is evidence of osteoarthritis of the face joints between L4–5 and L5–S1. There is evidence of spondylolysis of the L5 level on both sides.... The right shoulder joint appears normal." R. at 111.

A rating decision of October 16, 1987, continued the denial of service connection for appellant's back and denied service connection for his right shoulder. R. at 117–18. The denial of appellant's claims was affirmed by the BVA in June 1988. R. at 134–43. The Board found that any back disorder during service was acute and transitory, subsiding without residual disability, and that his then current back trouble, for which treatment was first sought many years after discharge, was not related to service. *Id.* The Board stated: "Although there was an initial indication that [appellant] landed on both shoulders in January 1953, there [were]

no clinical findings in service or during examinations in 1974 which demonstrated the presence of a right shoulder disability." *Id.* The Board concluded that appellant did not have a shoulder disability at the time of his separation from service. *Id.*

On December 5, 1990, appellant sought to reopen his claims by submitting the following evidence: Item (1) is a "Report of Work Injury," dated October 12, 1985, and signed by Dr. Eschrich, M.D., which indicates that appellant was injured on October 2, 1985, when he "was tying off some props in a ... truck [resulting in] strain [of the] right major shoulder with acute tendonitis [sic] [of the] long head of [the] biceps. R. at 148. X-rays of the right shoulder revealed, "Negative for fracture. Show old slight gap right acromioclavicular joint." *Id.* Dr. Eschrich also related appellant's history as including a right shoulder injury due to a fall in service. *Id.* Item (2) is a statement of Dr. Kanovsky, M.D., dated May 28, 1986, in which he made the following "clinical impression" based upon a physical examination and x-rays of appellant: "... Traumatic arthritis, acromioclavicular joint, right shoulder, with loose ossicle unrelated to [the 1985] injury ... Strain, right shoulder, superimposed on traumatic arthritis, right acromioclavicular joint, right shoulder." R. at 151. In the "Discussion and Summary" portion of Dr. Kanovsky's report, he states,

We have the situation of a current 52–year–old, right-handed gentleman who sustained injury to the right shoulder in 1954. I submit that the patient probably sustained a fracture of the lateral clavical of the acromioclavicular joint with resultant traumatic arthritis developing subsequent to this injury. The patient's injury at work in October, 1985, was nothing more than a strain and aggravation of a pre-existing condition to which the patient is predisposed.

. . . .

It is my opinion that apportionment is indicated, with 80% attributable to the pre-existing condition and 20% to this current injury.

*Id.* at 151, 152. Item (3) is a letter from Dr. McKim, D.C., dated November 20, 1990, which states,

> There is limited range of motion of the right shoulder. Radiographic exam revealed hypertrophy of the right acromioclavicular joint which would indicate an old injury.
>
> The cervicothoracic and lumbar spine exam revealed a loss of flexion, lateral rotation and lateral flexion with pain in all of the above ranges of motion. . . . Radiographic exam of the cervicothoracic and lumbar spine showed osteoarthritic changes and a loss of the C6, L3, L5 disc spaces. There is obvious multiple subluxation of these regions which would indicate some form of trauma.
>
> There is no history of trauma other than a fall the patient experienced in 1954 [when he] fell from an aircraft and landed on his head, neck[,] and shoulder. Approximately two years later he fell from an aircraft engine stand and landed on his back.
>
> My impression is that the neck, shoulder[,] and low back are old injuries sustained from his falls since there is no history of other accidents or falls.

R. at 146. Item (4) is appellant's testimony at a hearing before the RO on September 18, 1991, regarding his accidents in service and current condition. R. at 167–73.

On July 24, 1992, the BVA, in denying the reopening of appellant's claims, found that item (4) was cumulative of evidence before the Board in the 1988 decision, and thus was not new. R. at 6. Regarding item (3), the BVA noted that Dr. McKim's opinion that appellant's disabilities resulted from falls in service was based on a history of appellant's having no other accidents after service, and thus, "[t]he letter fails to indicate the 1985 shoulder injury reported in the other private records sent to reopen this claim." R. at 7. Additionally, regarding items (1), (2), & (3), the BVA, in concluding that the items were "of insufficient probative value," stated:

> Most significantly none of these health care providers, . . ., had an opportunity to review any of [appellant's] prior medical records in order to substantiate the history he provided them that he sustained chronic right shoulder and low back disabilities in service. This history, of a right, rather than left, shoulder injury in-service is not supported by the evidence of record and neither is the assertion that [appellant] developed *chronic* low back problems as opposed to acute and transitory low back symptoms.

R. at 7 (emphasis in original). A timely appeal of this decision to the Court followed.

## II. Applicable Law

■ Pursuant to 38 U.S.C.A. § 5108 (West 1991), the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C.A. § 7104(b) (West 1991). On claims to reopen, the BVA must conduct a "two-step analysis" under § 5108. *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material." *Id.* If it is, the Board must then adjudicate the claim on the basis of all the evidence, both new and old. *Jones (McArthur) v. Derwinski*, 1 Vet.App. 210, 215 (1991).

■ "New" evidence is "that which is not merely cumulative of other evidence of record." *Cox v. Brown*, 5 Vet.App. 95, 98 (1993). "Material" evidence is that which is relevant to and probative of the issue at hand, and of sufficient weight or significance that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome. *Id. see also Justus v. Principi*, 3 Vet.App. 510, 513 (1992); *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). The determination as to whether evidence is "new and material" is a question of law subject to de novo review in this Court under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992); *Jones*, 1 Vet.App. at 213; *Colvin*, 1 Vet.App. at 174.

The Court in *Justus*, 3 Vet.App. at 513, held that in determining whether evidence is new and material, the credibility of the evidence is to be presumed. The Court stated:

This presumption is made *only for the purpose of determining whether the case should be reopened.* Once the evidence is found to be new and material and the case is reopened, the presumption that it is credible and entitled to full weight no longer applies.

*Justus,* 3 Vet.App. at 513 (emphasis in original). The Court emphasized that its application of the presumption to the medical statement at issue did not constitute an endorsement of "either the weight or the credibility" of the statement, and that the determination of the weight and credibility of the evidence "is a question of fact for the Board to decide upon reopening and readjudication with a statement of reasons or bases for its findings. *See Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (199[0] )." *Id.*

The Court recently distinguished *Justus* in two decisions in which the Court found that the presumption of credibility, as applied to medical statements, did not arise. Both cases involved the de novo review of whether the evidence proffered in an attempt to reopen was new and material. In *Reonal v. Brown,* 5 Vet.App. 458, 460–61 (1993), the Court stated:

> The issue here is the basis upon which [the doctor's] opinion [that appellant's disability was service-connected] was made. [The doctor] relied upon appellant's account of his medical history and service background, recitations which had already been *rejected* by the [earlier] RO decision. An opinion based upon an inaccurate factual premise has no probative value.

Likewise, the Court in *Elkins v. Brown,* 5 Vet.App. 474, 478 (1993), stated:

> Although [the doctor] examined appellant on many occasions, there is no indication that he formed his opinion [that appellant's disability was service-connected] on a basis separate from appellant's recitation of his medical and service background. Further, [the doctor] conspicuously does not discuss the well-documented pre-service problems of the appellant ... in rendering his opinion. Neither [the doctor's] letters, nor his medical records, indicate that he reviewed appellant's service medical records or other relevant documents, which would have

enabled [the doctor] to form an opinion as to service connection based on independent grounds.

### III. Application of Law to Facts

■ The Court agrees with the BVA that item (4), appellant's testimony, is cumulative of evidence previously of record, and thus is not new. For clarity, the remaining newly submitted evidence, items (1) through (3), will be discussed below in relation to each relevant disability.

### A. Right Shoulder Disability

■ With respect to items (1) and (2), while it is true that there is no indication in the record that Dr. Eschrich or Dr. Kanovsky had examined appellant on any prior occasion, or that their reports were based upon a review of appellant's service or post-service medical records, these deficiencies are not dispositive for determining whether the reports constitute new and material evidence. What is critical is that Dr. Eschrich, aware of the 1985 accident, reports radiographic evidence of an *"old* slight gap *right* acromio-clavicular joint," and that Dr. Kanovsky opines that, based on a physical examination and x-rays of appellant which revealed *"[t]raumatic arthritis,* acromioclavicular joint, *right* shoulder, with loose ossicle *unrelated to [appellant's 1985] injury,"* 80% of appellant's present condition results from his injury in service. R. at 148 (emphasis added); R. at 151, 152 (emphasis added). Items (1) and (2), based not upon appellant's recitation of his history, but upon contemporaneous x-ray evidence and, with respect to item (2), a contemporaneous physical examination as well, do not constitute "medical opinion[s] based upon an inaccurate [that is, rejected] factual premise" which are to be accorded "no probative value" under the principle of *Reonal* and *Elkins. Reonal,* 5 Vet.App. at 461; *see Elkins,* 5 Vet.App. at 478. The only inference that can be drawn from the 1953 service records is that appellant fell on his right shoulder. As such records constitute the only old evidence in the record on appeal of a right shoulder injury, the BVA erred in not finding Dr. Eschrich's and Dr. Kanovsky's statements

new and material. In reaching this conclusion, the Court is not unmindful of the 1974 examination, relied upon by the BVA in its 1988 decision, which was silent as to any radiographic findings regarding the right shoulder and found normal and painless range of shoulder motion. R. at 65–66. However, there is no medical evidence in the record on appeal from which to conclude that because there were normal findings in 1974 the disability demonstrated in 1985 was not caused by the 1953 injury.

■ With respect to item (3), the Court agrees with the BVA that it is not new and material. As the BVA noted, Dr. McKim's opinion that appellant's right shoulder disability was incurred in service "since there is no history of other accidents or falls" (R. at 146), is based on an inaccurate history since it fails to acknowledge appellant's 1985 injury which is well-documented in the record. Therefore, as in *Reonal* and *Elkins,* it is not material for purposes of reopening in that there is no reasonable possibility that it would change the outcome. *See Colvin,* 1 Vet.App. at 174.

### B. Lumbar Spine Disability

With respect to items (1) and (2), the BVA was correct in finding them not new and material. Neither medical statement addressed appellant's back condition.

■ With respect to item (3), the BVA determined that Dr. McKim's letter was not new and material with respect to both of appellant's claims since it was based on an inaccurate history. Although, as indicated above, the Court agrees with the BVA with respect to the shoulder condition, the evidence can not be so easily dismissed as it pertains to appellant's back condition. While the history which was given by Dr. McKim, and which formed the basis of his opinion concerning service connection of appellant's shoulder, is inaccurate because it failed to take into account appellant's 1985 accident in which he injured his right shoulder, the failure to consider this accident has no bearing on the doctor's opinion regarding appellant's back condition since the 1985 accident did not involve the back. Dr. McKim's opinion that appellant's low back problems were incurred

in service is based upon a physical examination revealing pain and limited motion, and upon x-rays showing "osteoarthritic changes and a loss of ... disc spaces ... which would indicate some form of trauma." R. at 146. The only incidents of record of trauma to the spine are appellant's falls during service. Therefore, presuming Dr. McKim's opinion to be credible, the Court finds that item (3) is new and material.

### C. Harmless Error Rule

■ While it is true that the BVA found the newly submitted evidence not to be new and material and therefore purported not to reopen the claims, as a practical matter, it performed a de facto reopening. *See Guimond v. Brown,* 6 Vet.App. 69 (1993). Nevertheless, this case does not present mere harmless error. *Id.* at 72. Rather, it must be remanded because the record contains no evidence, and the BVA does not point to any evidence, from which to conclude that a finding of a normal right shoulder in 1974 indicates that a right shoulder disability demonstrated in 1985 was not caused by the 1953 in-service right shoulder injury, and because the BVA did not substantively address Dr. McKim's letter, item (3), as it pertained to appellant's lumbar spine disability. *See Gilbert,* 1 Vet.App. at 56–57; *Colvin,* 1 Vet.App. at 175.

### IV. Conclusion

For the reasons stated above, the BVA decision of July 24, 1992, is VACATED and the matter is REMANDED for proceedings consistent with this opinion.