Citation Nr: 1706018 
Decision Date: 02/28/17 Archive Date: 03/03/17

DOCKET NO. 05-09 164 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUES

1. Entitlement to service connection for a chronic left knee disability.

2. Entitlement to service connection for a chronic left thigh disability.

3. Entitlement to service connection for residuals of fractures of two fingers, right hand.

(The issue of entitlement to waiver of a debt in the calculated amount of $2,839.94 is the subject of a separate decision.) 


REPRESENTATION

Appellant represented by: Lawrence D. Levin, Attorney at Law



WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Tresa M. Schlecht, Counsel


INTRODUCTION

The Veteran had active Marine Corps service from June 1987 to August 1996. This matter initially came before the Board of Veterans' Appeals (Board) on appeal from rating decisions issued by the Philadelphia, Pennsylvania, Regional Office (RO) of the Department of Veterans Affairs (VA) beginning in January 2004. The claims listed on the title page of this decision were previously remanded in November 2006, November 2008, and October 2013. 

At the time of the November 2006, November 2008, and October 2013 Board Remands, the Veteran was seeking service connection for hypertension. Service connection for hypertension was granted in 2016, and the Veteran disagreed with the noncompensable initial rating assigned for that disability. An April 2016 statement of the case (SOC) addressed the initial rating assigned for hypertension. In a May 2016 substantive appeal, the Veteran requested a hearing before the Board by videoconference at the RO. The Veteran has been notified that he will be scheduled for that hearing. The RO certified the appeal for transfer to the Board, noting that no hearing was requested, but that notation is in error. The Board should not take jurisdiction of the appeal for an increased (compensable) evaluation for hypertension at this time, as there is no indication in the record that the Veteran has withdrawn his request for a hearing before the Board. 

In his May 2016 substantive appeal for a higher rating for hypertension, the Veteran also referenced the claims listed on the title page of this decision, stating "I truly believe that further review of the evidence will reveal that these conditions exist . . . as a result of my military service." The Veteran testified before the undersigned in March 2006 regarding each of the issues listed on the title page of this decision. He is not entitled to an additional hearing on the same claims in the absence of a motion properly filed with adequate rationale for the request. The Board does not interpret the May 2016 substantive appeal of the claim for an increased (compensable) evaluation for hypertension as a motion for an additional hearing regarding the claims for service connection for left knee, left thigh, and right finger disabilities. 38 C.F.R. § 20.700(a) (2015).

In March 2012, the Veteran sought non-service-connected pension. The list of disabilities he contended supported the claim for pension included several disabilities for which service connection had not been claimed, including a right groin disability. In 2015, the Veteran apparently advised examiners that he was seeking service connection for a right thigh disability. A claim for service connection for a right thigh disability for service connection purposes has not been adjudicated. This matter is REFERRED to the agency of original jurisdiction (AOJ) for clarification with the Veteran.

In September 2016, the Veteran was notified that a claim for service connection for insomnia had been denied. The record on appeal does not disclose that the Veteran has disagreed with that determination. No issue regarding a claim of insomnia is before the Board on appeal at this time.

The Veteran testified before the undersigned Veterans Law Judge at a Travel Board hearing conducted in Philadelphia, Pennsylvania, in January 2006. A transcript of that hearing is associated with the electronic claims file.

The Veteran's claims file is entirely electronic. There are nearly 400 documents on the VBMS electronic records system and more than 160 documents on the Virtual VA electronic records system.



FINDINGS OF FACT

1. The Veteran's service treatment records are mostly unavailable. 

2. The Veteran reports that he fractured two fingers of the right hand in service, but available records, including military personnel records do not confirm the report. Arthritis was first shown many years after service and there has been essentially no treatment for impairment since service.

3. Reports of a continuing left knee or left thigh disabilities do not confirm that there is any relationship to service; arthritis of the left knee was first demonstrated years after service.

4. The medical evidence establishes that it would require resort to "mere speculation" to link a current left knee, left thigh, or right hand disability to the Veteran's service.


CONCLUSION OF LAW

The criteria for service connection for a chronic left knee disability, a chronic left thigh disability, or right hand disability, are not met, nor may service connection for arthritis be presumed. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to notify and assist

A letter issued in August 2003 advised the Veteran of the criteria for service connection and of the types of evidence which might assist the Veteran to substantiate his claims. Other notice letters regarding substantiation of service connection were issued in December 2006, March 2009, and July 2012. Neither the Veteran nor his representative has alleged prejudice with respect to notice as to any claim. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009). No notice deficiency appears in the record. 

Soon after the Veteran submitted his formal claim for service connection, the RO sought service treatment records from the National Personnel Records Center (NPRC). However, no service treatment records other than entrance physical examinations were located. Additional attempts to locate the Veteran's service treatment records were unsuccessful, including attempts to locate separately-filed hospital records and requests directed to each hospital facility identified. 

Following the 2006 Board Remand, the Appeals Management Center again requested service medical records for the Veteran, submitting a February 2007 request to NPRC for a search for records from the military hospital at the Veteran's last duty station. Following the 2008 Board Remand, VA again attempted to obtain service treatment records directly from that facility. In February 2013, the RO made a formal finding of unavailability of the Veteran's service treatment records, and notified the Veteran. The Veteran was notified in August 2016 that attempts to obtain additional his service treatment records from NPRC were unsuccessful. The Veteran himself sought his records from NPRC, but NPRC was unable to locate any service treatment records. Numerous documents such as authorizations for release of records, requests for records, and responses to requests for records, document the multiple but unsuccessful attempts to obtain the Veteran's service treatment records from a variety of sources. The duty to assist the Veteran to attempt to obtain those records has been met.

VA examinations relevant to this appeal were conducted in May 2008, June 2013, and April 2015. Voluminous VA treatment records are associated with the claims file. The Veteran has stated that there are no other relevant clinical records. 

A VLJ who chairs a hearing before the Board has a duty to fully explain the issues and a duty to suggest the submission of evidence that may have been overlooked. 38 C.F.R. § 3.103(c)(2). The undersigned VLJ focused on the elements necessary to substantiate the Veteran's claims at the Veteran's 2006 hearing. Each duty to assist a Veteran at a hearing set forth in the governing regulation has been met. 38 C.F.R. § 3.103(c)(2). 

Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist in the development of the claims on appeal. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

Claims for service connection

Service connection may be granted for a chronic disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Service connection may also be granted on the basis of a post-service initial diagnosis of a disease, when "all of the evidence, including that pertinent to service, establishes that the disease was incurred during service." See 38 C.F.R. § 3.303(d). 

Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498 (1995).

The second and third elements may be established by showing continuity of symptomatology. Continuity of symptomatology may be shown by demonstrating "(1) that a condition was 'noted' during service or any applicable presumption period; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology." Barr v. Nicholson, 21 Vet. App. 303, 307 (2007); see also Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board"). 

The theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic under 38 C.F.R. § 3.309(a), such as arthritis and diabetes. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Diagnoses recognized as chronic are among the disabilities claimed in this case, and this theory of service connection is discussed below.

That is, service connection for some chronic disorders, such as arthritis, may be presumed to have been incurred in service where manifested to a compensable degree within 1 year following separation from qualifying service. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309.

Compensation may be paid to a Persian Gulf Veteran who exhibits objective indications of chronic disability due to undiagnosed illnesses or combination of undiagnosed illnesses that became manifest either during active duty in the Southwest Asia theater of operations during the Persian Gulf War or to a degree of 10 percent or more before December 31, 2021, following such service. 38 U.S.C.A. § 1117; 38 C.F.R. § 3.317. The Veteran does not contend that a left knee, left thigh, or right hand disability are undiagnosed or symptoms of a medically unexplained chronic multisymptom illness or should be presumed related to his service during the Persian Gulf War. Further discussion of this theory of service connection is not required. 

Facts 

In April 2003, the Veteran submitted a formal claim for service connection for disabilities listed, in pertinent part, as "left knee/thigh" disability, incurred in 1994, and "r[igh]t hand fracture" disability, incurred in 1988. The Veteran indicated that "knee/hand" disabilities had been treated at VA facilities since March 2003. 

As noted, other than an entrance physical examination, that reveals no abnormal findings pertinent herein, there are no available service treatment records. There is a June 1995 document noting that other than weight issues which were being dealt with, the Veteran was recommended for re-enlistment. There is no evidence in his administrative or personnel records of any limitations of duty or limited profiles during the time he was in service that were caused by any of the disabilities at issue herein.

VA clinical records dated from March 2003 through September 2003 disclose that the Veteran was treated for arthritis of the left knee. A June 2003 radiologic examination of the knee disclosed mild degenerative changes and a small suprapatellar joint effusion. The treating provider opined that the Veteran had internal derangement of the left knee with a torn medial meniscus and possibly an anterior cruciate ligament tear. The examiner provided no opinion as to onset or etiology.

A May 2004 VA outpatient treatment note reflects that an April 2004 MRI of the left knee disclosed a tear of the anterior cruciate ligament and a tear of the posterior horn of the medial meniscus. 

At his January 2006 Travel Board hearing, the Veteran testified that he injured his left knee in September 1994, while at Cherry Point, North Carolina. A left thigh injury was incurred in February 1996, while still stationed in North Carolina, during wrestling. He was treated for an injury of the right hand in at the Naval Air Station in Memphis, Tennessee. The Veteran testified that he had no post-service medical treatment for the claimed disabilities other than at VA. Transcript, 2006 Travel Board Hearing, at 11. His non-VA treatment was for accidents and ailments other than the disabilities for which he was seeking service connection.

The Veteran submitted "buddy statements." AH, who stated he was a former fellow service member who served with the Veteran, reported that he met the Veteran in January 1992. He heard the Veteran complain about left knee and right hand pain. He did not indicate when the Veteran made these complaints. 

TMK, who stated he was a former fellow service member, reported, in April 2008, that he was stationed with the Veteran in 1988 at the Millington Naval Air Station, and again was stationed with the Veteran in 1996 in North Carolina. TMK stated that the Veteran complained of right hand, left knee, and right thigh ailments. 

In March 2010, SLB, who stated he was a former fellow service member, reported that he observed in 1992 that the Veteran had right hand pain. SLB stated that he later asked the Veteran to help him move some things, but the Veteran was in great pain due to left knee injury. 

The Veteran did not report for VA examinations scheduled in August 2003. At VA examination conducted in May 2008, the examiner stated that, based on the history provided by the Veteran, it was "at least as likely as not" that a current left knee disability was the result of a 1994 left knee injury, and it was "at least as likely as not" that a current disability of the right hand, 4th metacarpal and 5th metacarpal, was due to a hand injury incurred in service in 1988, since those were the only injuries reported by the Veteran and he reported recurrences of similar symptoms. 

The Board directed additional factual development in its 2008 Remand. No medical opinion was obtained.

The report of June 2013 VA examination reflects that the Veteran reported pain in the upper left thigh with certain motions. He used a medial compartment brace, left leg, for stabilization during ambulation. The Veteran had some instability of the left knee. Radiologic examination of the knees disclosed severe degenerative arthritis of both knees, more severe on the left, bilateral fluid on the knees, and a thickened right infrapatellar tendon. 

The Veteran reported loss of dexterity with the 4th and 5th digits on the right hand, and discomfort and fatigue with repetitive use. Objectively, there was pain on palpation of the right hand, and a slightly decreased grip (4/5) as compared to the left hand (5/5). The examiner noted that the Veteran reported no injuries to the right hand other than fractures of the 4th and 5th digits in service. However, the examiner did not render an opinion as to the etiology of the Veteran's complaints or objective abnormalities. 

In April 2015, the VA examiner stated that the examination of the left knee was neither medically consistent nor inconsistent with the Veteran's statements describing functional loss during flare-ups, but did not provide an opinion as to etiology. Specifically, the examiner noted, "Veteran injured left knee during training exercises in 1994 per Veteran. . . . Without the medical military records I would be resorting to mere speculation."

The Veteran was scheduled for an examination of the hip and thigh in August 2015. The Veteran failed to report. In a January 2016 addendum to a previous VA examination report, the examiner stated that no opinion could be provided as to a left thigh or left groin disability because the Veteran reported that he was not claiming any left thigh or left groin injury. Rather, the Veteran reported that he was seeking service connection for a right thigh injury. 
 
Analysis

As noted, the Veteran's service treatment records are mostly unavailable, through no fault of the Veteran. The absence of service treatment records is neither favorable nor unfavorable to the Veteran's claims. The Board notes, however, that the Veteran himself reported that he was never treated for a left knee disability or a left thigh disability during service. As noted there are administrative/personnel records for review that reveal consideration of weight issues in service, but do not reflect that he ever had limited duty profiles or change in military duties due to any of the disabilities claimed herein.

The Veteran has reported and testified that he does not recall any post-service treatment of a left knee, left thigh, or right hand disability prior to 2003, when more than 5 years had elapsed since the Veteran's service discharge. As such, none of the clinical evidence shows continuing or chronic impairment from service, the years following service, or prior to 2003. Arthritis was not shown within one year following separation from service.

There is no post-service clinical evidence prior to the Veteran's VA treatment beginning in 2003. The VA treatment records reflect that the Veteran consistently reported to his providers that left knee pain, left thigh pain, and an injury to the right hand during in service. The transcriptions of the lay history reported by the Veteran were unenhanced by any additional medical comment by the transcribers. The Veteran's self-reported but unsubstantiated medical history is of little probative value. E.g., Reonal v. Brown, 5 Vet. App. 458, 461 (1993); Elkins v. Brown, 5 Vet. App. 474 (1993). 

The Veteran's VA treatment records also reflect that he worked in a warehouse, drove a forklift, worked in nightclub security, worked at temporary jobs, and performed unskilled and manual labor jobs. The Veteran also relates that, when his substance abuse problems were most severe, he sold illegal drugs. The Veteran reported to his providers that he had altercations related to drugs, was shot at in situations related to drugs, and had been incarcerated. The Veteran's history is inconsistent with a finding that he could not have incurred current disabilities after service discharge.

The Veteran's statements that he incurred left knee injury and experienced left thigh swelling and pain in service are credible. However, the Veteran is not competent to provide a medical opinion that a left knee injury in service or left thigh symptoms in service resulted in a current disability or current residuals, since the etiology of the current left knee and left thigh disabilities are not matters observable by a lay person, and the Veteran has been unable to provide any medical or nonmedical substantiation of his statements as to chronicity of symptoms following service. The Board finds it significant that the Veteran has been unable to provide such evidence, given the 13-year pendency of the claims. 

While the Veteran's hand fractures may have been visible to a lay observer during service, he has not reported that he observed current 4th and 5th digit disability in service. Rather, he has reported only that he had chronic pain in his right hand during service. The Veteran's buddy statements indicate that those fellow servicemembers heard the Veteran complain about right hand pain, but do not include observations consistent with the current observable 4th and 5th digits disabilities. As noted, there is no suggestion in personnel records that because of casting or other treatment he was given a limited profile or that his duty was changed.

As noted above, the descriptions of the Veteran's symptoms in service by his fellow service members are so vague that the statements are of little probative value other than to support the Veteran's reports that he had symptoms of pain in the left knee, left thigh, and right hand during service. Thus, while there may have been some noted complaints in service, nothing in these documents establishes that he had chronic impairment during service. Isolated complaints of pain, without other evidence of continuing impairment, not shown herein, are not sufficient to establish service connection. 

One VA medical opinion, provided by the examiner who conducted the 2008 VA examination, is slightly favorable to the Veteran, in that the examiner states that it "appears" that the Veteran's left knee arthritis is related to an injury in service, based on the medical history provided by the Veteran. The examiner also opined that it appeared from the medical history provided by the Veteran that current left thigh strain was related to service. The examiner further opined that, given the medical history provided by the Veteran that he had no significant trauma to the right hand other than the injury in service in 1988, it was likely that the 1988 injury was the etiology of the Veteran's current right hand pain. However, this medical rests on the absence of any etiology for the Veteran's current left knee, left thigh, and right hand disabilities other than the Veteran's reports of the in-service injuries. The Veteran's report of an absence of post-service injury is inconsistent with the picture overwhelmingly established in the medical records as a whole. 

The VA examiner who provided the 2015 medical opinion simply stated that, given the lack of medical or non-medical evidence other than the Veteran's own lay report, it would require resort to "mere speculation" to link current disability to the Veteran's service. The Board finds this opinion to be an accurate and persuasive summary of the record, as to the left knee and right hand disabilities addressed in this appeal. 

The examiner who provided the 2016 addendum also indicated that it was not possible to provide an opinion as to the etiology of a current left thigh disability, since the Veteran himself reported, at the most recent VA examination (2015), that he did not have a left thigh disability, but, rather, had a right thigh disability. The Board notes that service connection may be granted for a disorder which is present during some portion of the pendency of an appeal but later resolves. McLendon v. Nicholson, 20 Vet. App. 79 (2006). However, the Veteran currently indicates that the claim that he had a left thigh disability in service was inaccurate. The primary evidence linking a left thigh disability noted during the pendency of this claim to a thigh disability during service was the Veteran's lay report. As the Veteran himself has indicated that his report was not accurate, service connection is not warranted for a left thigh disability at any time during the pendency of this appeal, in the absence of an accurate report of a link to the Veteran's service. 

The Veteran's lay reports that a current right hand, left knee, or left thigh disability were incurred in service are not sufficient to place the evidence as a whole in equipoise to warrant a finding that he has a current left knee, left thigh, or right hand disability which is at least as likely as not related to service. 

Rather, the most persuasive medical opinion and the medical evidence viewed as a whole establish that a determination as to the etiology of a current left knee or left thigh disability or a current right hand disability requires resort to "mere speculation." Such speculation as to etiology does not meet the criteria for an award of service connection. The preponderance of the evidence is, therefore, against the claims. 


ORDER

Service connection for a chronic left knee disorder is denied.

Service connection for a chronic left thigh disorder is denied.

Service connection for a right hand disability is denied.

____________________________________________
MICHAEL D. LYON 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs