Citation Nr: 1504675 
Decision Date: 01/30/15 Archive Date: 02/09/15

DOCKET NO. 08-31 135 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Boise, Idaho


THE ISSUES

1. Entitlement to service connection for a right ankle disability.

2. Entitlement to service connection for a left ankle disability.

3. Entitlement to service connection for a right foot disability.

4. Entitlement to service connection for a left foot disability.

5. Entitlement to service connection for a bilateral knee disability.

6. Entitlement to service connection for a bilateral wrist disability.

7. Entitlement to service connection for bilateral hearing loss.


WITNESS AT HEARING ON APPEAL

The appellant
ATTORNEY FOR THE BOARD

B. Elwood, Counsel


INTRODUCTION

The appellant served in the Army Reserve from July 1968 to approximately July 1981. He had a verified period of active duty for training (ACDUTRA) from July 1968 to January 1969.

These matters initially came before the Board of Veterans' Appeals (Board) from a February 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Boise, Idaho. 

The appellant testified before the undersigned at an August 2009 hearing at the RO (Travel Board hearing). A transcript of the hearing has been associated with the file.

In March 2014, the Board remanded these matters for further development.

The appellant submitted an August 2009 "Appointment of Individual as Claimant's Representative" form (VA Form 21-22a) appointing R.E. as his agent. However, the agent is not accredited as a representative by VA's Office of General Counsel and the appellant was notified of this fact in a December 2014 letter sent by the Board. Under VA regulation, agents and attorneys who commence representation on or after June 23, 2008 must file an application for accreditation with VA's Office of General Counsel. 38 C.F.R. § 14.629 (2014). 

A non-accredited agent may, however, act on a one time basis in a single claim if a statement is signed by the agent and the claimant that no compensation will be charged or paid for the services. 38 C.F.R. § 14.630 (2014). There is no such agreement signed by the appellant and the agent in the file. Therefore, this exception is not applicable in this case. The December 2014 letter notified the appellant of his right to representation, requested that he clarify his choice of representation, and notified him that if a response was not received within 30 days his appeal would be adjudicated with the assumption that he wished to represent himself. The appellant responded that he wished to represent himself and he requested that the Board proceed with his appeal. Hence, the appellant is now unrepresented. 38 C.F.R. § 20.608(a) (2014).

The issues of entitlement to service connection for a left ankle disability, a left foot disability, and bilateral hearing loss are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The appellant's current right ankle disability did not have its clinical onset in service, was not aggravated in service, and is not otherwise related to service.

2. The appellant's current right foot disability did not have its clinical onset in service, was not aggravated in service, and is not otherwise related to service. 

3. The appellant's current bilateral knee disability did not have its clinical onset in service, was not aggravated in service, and is not otherwise related to service. 

4. The appellant's current bilateral wrist disability did not have its clinical onset in service, was not aggravated in service, and is not otherwise related to service. 


CONCLUSIONS OF LAW

1. The appellant's current right ankle disability was not incurred or aggravated in service. 38 U.S.C.A. §§ 101(2), (24), 1110, 1131, 5107(b) (West 2014); 38 C.F.R. §§ 3.6(a), 3.303, 3.309(a) (2014).

2. The appellant's current right foot disability was not incurred or aggravated in service. 38 U.S.C.A. §§ 101(2), (24), 1110, 1131, 5107(b); 38 C.F.R. §§ 3.6(a), 3.303, 3.309(a).

3. The appellant's current bilateral knee disability was not incurred or aggravated in service. 38 U.S.C.A. §§ 101(2), (24), 1110, 1131, 5107(b); 38 C.F.R. §§ 3.6(a), 3.303, 3.309(a).

4. The appellant's current bilateral wrist disability was not incurred or aggravated in service. 38 U.S.C.A. §§ 101(2), (24), 1110, 1131, 5107(b); 38 C.F.R. §§ 3.6(a), 3.303, 3.309(a).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014) redefined VA's duty to assist the appellant in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2014).

Under the VCAA, VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; (3) that the claimant is expected to provide; and (4) must request that the claimant provide any evidence in his possession that pertains to the claim. Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004); see 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b).

The United States Court of Appeals for Veterans Claims (Court) has also held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).
In pre-adjudication letters dated in March and July 2007, the RO notified the appellant of the evidence needed to substantiate his claims of service connection for a right ankle disability, a right foot disability, a bilateral knee disability, and a bilateral wrist disability. These letters also satisfied the second and third elements of the duty to notify by delineating the evidence VA would assist him in obtaining and the evidence it was expected that he would provide. Quartuccio v. Principi, 16 Vet. App. 183, 186-87 (2002); Charles v. Principi, 16 Vet. App. 370 (2002).

The claimant's duty status has been substantiated. He was notified of all other elements of the Dingess notice, including the disability rating and effective date elements of his claims, in the March and July 2007 letters. 

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. 
§ 3.159(c), (d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4). 

The Court has held that the provisions of 38 C.F.R. § 3.103(c)(2) (2014) impose two distinct duties on VA employees, including Board personnel, in conducting hearings: the duty to explain fully the issues and the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010) (per curiam).

At the appellant's August 2009 hearing, the undersigned identified the issues on appeal (including entitlement to service connection for a right ankle disability, a right foot disability, a bilateral knee disability, and a bilateral wrist disability) and asked the appellant about the history of his claimed disabilities and the treatment received for these disabilities. Further, the appellant provided testimony as to the symptoms and history of his claimed disabilities and the treatment provided for the disabilities and he has submitted additional evidence throughout the claim period, thereby demonstrating actual knowledge of the ability to identify and submit additional relevant evidence. The duties imposed by Bryant were thereby met.
VA obtained some of the appellant's service treatment records and pertinent service personnel records and all of the identified relevant post-service private medical records. The appellant has not reported, and the evidence does not otherwise reflect, that he has received any relevant post-service VA medical treatment for a right ankle disability, a right foot disability, a knee disability, or a wrist disability. In addition, the appellant was afforded VA examinations to assess the nature and etiology of his current right ankle disability, right foot disability, bilateral knee disability, and bilateral wrist disability and opinions have been obtained concerning the etiology of these disabilities.

The AOJ has made numerous attempts to obtain the appellant's complete service treatment and personnel records, including by way of contacting the National Personnel Records Center, the Army National Guard, the Records Management Center, and Fort Dix. Although some minimal service records have been obtained, the appropriate entities have responded that no additional records are available.

Destruction of service records does not create a heightened benefit of the doubt, but only a heightened duty on the part of VA to consider the applicability of the benefit of the doubt, to assist the claimant in developing the claim, and to explain its decision. Cromer v. Nicholson, 19 Vet App 215 (2005); Russo v. Brown, 9 Vet. App. 46, 51 (1996). 

Where service records are missing, VA also has a duty to search alternate sources of service records. Washington v. Nicholson, 19 Vet. App. 362 (2005). The service department has not suggested alternate sources of records, but VA has asked the appellant for copies of any records in his possession. Thus, the Board finds that any further efforts to obtain additional service records would be futile. 38 C.F.R. § 3.159(c)(2).

In its March 2014 remand, the Board instructed the AOJ to, among other things, afford the Veteran a VA examination to assess the nature and etiology of his claimed ankle, foot, knee, and wrist disabilities and obtain opinions as to the etiology of any such disabilities. The appellant was afforded VA examinations in May 2014 and opinions were obtained concerning the etiology of his claimed disabilities. These examinations were thorough, contained all pertinent findings, and responded to the inquiries posed by the Board.

Thus, with respect to the claims of service connection for a right ankle disability, a right foot disability, a bilateral knee disability, and a bilateral wrist disability, the AOJ substantially complied with all of the Board's relevant March 2014 remand instructions. VA has no further duty to attempt to obtain any additional records or conduct additional examinations with respect to the claims being decided herein. See Dyment v. West, 13 Vet. App. 141, 146- 47 (1999); Stegall v. West, 11 Vet. App. 268 (1998).

Analysis

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303.

The term "active military, naval, or air service" includes: (1) active duty; (2) any period of ACDUTRA during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in the line of duty; and (3) any period of inactive duty training (INACDUTRA) during which the individual concerned was disabled or died from an injury incurred or aggravated in the line of duty or from an acute myocardial infarction, a cardiac arrest, or a cerebrovascular accident occurring during such training. 38 U.S.C.A. § 101(2), (24); 38 C.F.R. § 3.6(a). In other words, service connection is available for diseases or injuries incurred in or aggravated by ACDUTRA and injuries incurred in or aggravated by INACDUTRA (including an acute myocardial infarction, a cardiac arrest, or a cerebrovascular accident).

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table); see also Hickson v. West, 12 Vet. App. 247, 253 (1999); 38 C.F.R. § 3.303.

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza element for certain chronic disabilities listed in 38 C.F.R. § 3.309(a) (including arthritis) is through a demonstration of continuity of symptomatology. See Clyburn v. West, 12 Vet. App. 296, 302 (1999). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. See Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013); 38 C.F.R. §§ 3.303(b), 3.309(a).

In relevant part, 38 U.S.C.A. § 1154(a) (West 2014) requires that VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability or death benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence").

"Symptoms, not treatment, are the essence of any evidence of continuity of symptomatology." Wilson v. Derwinski, 2 Vet. App. 16, 19 (1991)). Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno v. Brown, 6 Vet. App. 465, 469 (1994) (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted")).

Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Initially, the Board notes that there is evidence of a pre-existing bilateral wrist disability in that the Veteran has reported bilateral wrist fractures prior to service. The presumption of soundness under 38 U.S.C.A. § 1111 (West 2014) does not apply when a claimant has not been examined contemporaneous to entering a period of ACDUTRA or INACDUTRA. Smith v. Shinseki, 24 Vet. App. 40, 45 (2010). Moreover, the presumption of aggravation under 38 U.S.C.A. § 1153 (West 2014) is inapplicable to periods of ACUTRA and INACDUTRA. Specifically, the Court has held that a claimant whose claim is based solely on a period of ACDUTRA or INACDUTRA can never be entitled to a "presumption of service connection." See Id. at 47. Such a presumption is not possible in such circumstances because, by definition, the presumption of service connection applies where there is no evidence that a condition began in or was aggravated during the relevant period of service. With regard to a claimant whose claim is based solely on a period of ACDUTRA or INACDUTRA, however, there must be some evidence that the condition was incurred or aggravated during the relevant period of service. Id.

The appellant's only service includes periods of ACDUTRA and INACDUTRA. He did not undergo any examinations contemporaneous to entering any specific period of ACDUTRA or INACDUTRA. Hence, the presumption of soundness is inapplicable in this case.

Furthermore, presumptive service connection for the appellant's current disabilities is not warranted under any circumstance (to include under the provisions pertaining to chronic diseases and aggravation of a pre-existing disease). Id. Rather, in order for service connection to be warranted on the basis of aggravation of a pre-existing disability during a period of ACDUTRA or INACDUTRA, the appellant must provide direct evidence both that a worsening of the injury or disease occurred during the period of ACDUTRA or INACDUTRA and that the worsening was caused by the period of ACDUTRA or INACDUTRA. Id. at 48.

In the present case, VA examination reports dated in May 2014 include diagnoses of right ankle degenerative arthritis, right foot pes planus, bilateral chondromalacia patella of the knees, a schwannoma of the left knee, and bilateral wrist arthritis. Thus, current disabilities have been demonstrated.

The appellant contends that his claimed disabilities are all related to the cumulative impact of the various physical activities which he performed during service. In the case of his claimed wrist disability, he claims that the pre-existing disability was aggravated during service. During the August 2009 hearing, he reported that he began to experience joint pain during service, that he began to seek treatment for arthritis problems in approximately 1968, and that such treatment "continued to the present day." Hence, the appellant appears to have alluded to a continuity of symptomatology.

The appellant is competent to report joint problems in service as well as a continuity of symptomatology in the years since service. However, his reports must be weighed against the objective evidence and their credibility must be assessed. See Jandreau, 492 F.3d at 1376-77; Buchanan, 451 F.3d at 1336.

There is no evidence of any complaints of or treatment for right ankle, right foot, knee, or wrist problems in the appellant's available service treatment records and a November 1977 pre-enlistment examination was normal other than for a left hand scar. The objective evidence otherwise indicates that the appellant's current right ankle disability, right foot disability, knee disability, and wrist disability did not manifest until years after service. The earliest post-service clinical evidence of right ankle and foot disabilities is a June 1998 treatment record from R.B. which reveals that the appellant experienced a painful bump on his foot for 3 years and that he broke his right ankle 3 years earlier. He was diagnosed as having an epidermoid cyst. Also, the earliest post-service clinical evidence of knee and wrist disabilities are the May 2014 VA examination reports which include diagnoses of bilateral chondromalacia patella of the knees, a schwannoma of the left knee, and bilateral wrist arthritis.

There is no clinical evidence of any earlier ankle, foot, knee, or wrist problems following service. The Board acknowledges that there is lay evidence of earlier symptoms following service in that the appellant appears to have reported a continuity of symptomatology in the years since service. As explained below, however, the Board finds that the appellant's reports concerning the history of his claimed disabilities (including any reports of a continuity of symptomatology in the years since service) are not credible.

The absence of any objective clinical evidence of ankle, foot, knee, or wrist symptoms for over a decade after the appellant's separation from service in approximately July 1981 weighs against a finding that his current right ankle disability, right foot disability, bilateral knee disability, or bilateral wrist disability were present in service or in the year or years immediately after service. 

The appellant has provided varying statements as to the history of his joint symptoms. For example, he claimed during the August 2009 hearing that he began to receive treatment for joint symptoms in approximately 1968 and that treatment for such symptoms had continued in the years since that time. However, he reported on a November 1977 report of medical history form completed for purposes of a re-enlistment examination that he was not experiencing, nor had he ever experienced, any "swollen or painful joints," "broken bones," arthritis, rheumatism, or bursitis," "bone, joint or other deformity," "'trick' or locked knee," or "foot trouble." He did acknowledge a history of an old fracture to both wrists, but it was noted that they were well healed and were "NCD" (not considered disabling/disqualifying).

In light of the absence of any objective evidence of complaints of or treatment for ankle, foot, knee, or wrist problems in the appellant's available service treatment records, the absence of any clinical evidence of ankle, foot, knee, or wrist symptoms for many years following service, and the appellant's inconsistent statements concerning the history of his symptoms, the Board concludes that his reports concerning the history of his claimed joint disabilities, including any reports of a continuity of symptomatology in the years since service, are not credible. Thus, neither the clinical record nor the lay statements of record establish a continuity of symptomatology in this case, precluding an award of service connection on this basis.

Nevertheless, even if there was credible evidence of a continuity of foot or knee symptomatology, an award of service connection for these disabilities solely on this basis would nonetheless be precluded because the appellant's current right foot and bilateral knee disabilities are not among the chronic conditions listed in 38 C.F.R. § 3.309(a). Service connection on the basis of a continuity of symptomatology, alone, may only be granted if a claimed disability is among this list of chronic conditions. See Walker, 708 F.3d at 1338.

The medical opinions of record indicate that the appellant's current right ankle disability, right foot disability, bilateral knee disability, and bilateral wrist disability were not incurred in or aggravated during any period of service. The physician assistant who conducted the May 2014 VA examinations opined that the appellant's claimed disabilities were not likely ("less likely than not"/"less than 50 percent probability") incurred in or caused by the claimed in-service injury, event, or illness. She reasoned that the appellant's right ankle disability corresponded to only the residuals of the 1995 fracture and the diagnosed neurilemoma was entirely from this injury. It was not at all likely that the current right ankle disability had any relationship to service, including infantry training two weeks out of every year.

As for the diagnosed right foot and bilateral knee disabilities, the examiner reasoned that the appellant's very minimal right pes planus, arch pain, and bilateral minimal chondromalacia patella were consistent with age and an active work history. The schwannoma of the left knee was not related to any trauma or any other condition. The right foot and bilateral knee disabilities were not at all likely to be related to service, including infantry training two weeks out of every year.

Moreover, with respect to the diagnosed bilateral wrist disability, the examiner explained that the degenerative changes in the wrists were only consistent with age and an active work history. The only available service examination report in 1977 stated that the appellant's wrists were completely healed. As he had no other injuries to the wrists and had employment during and since service with heavy hand/wrist use, it could not be found that infantry training two weeks a year or any part of service was related to his pre-existing disability. It was most likely that the current bilateral degenerative changes of the wrists were only due to aging.

The examiner concluded that the appellant's current total conditions were well within the norm for his age, "significantly physically active work history and the 1995 right ankle fracture." The appellant had presented no records to show any continuity of care for any of his claimed disabilities and there were no service treatment records to support any of these disabilities.

The May 2014 opinions do not explicitly acknowledge or discuss the appellant's apparent report of a continuity of symptomatology in the years since service. However, as explained above, any reports of a continuity of symptomatology are not deemed to be credible and an opinion based on such an inaccurate history would be inadequate. See Boggs v. West, 11 Vet. App. 334, 345 (1998); Kightly v. Brown, 6 Vet. App. 200, 205-06 (1994); Reonal v. Brown, 5 Vet. App. 458, 460-61 (1993).

The May 2014 opinions were otherwise based upon an examination of the appellant and a review of his medical records and reported history and they are accompanied by specific rationales that are not inconsistent with the evidence of record. Thus, these opinions are adequate and entitled to substantial probative weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning; threshold considerations are whether the person opining is suitably qualified and sufficiently informed).

Lay evidence may be competent on a variety of matters concerning the nature and cause of disability. Jandreau, 492 F.3d at 1377 n.4. The general principle that trauma may lead to degenerative changes is commonly known and, therefore, the appellant's testimony that his claimed disabilities are related to his physical activities in service has some tendency to make a nexus more likely than it would be without such an assertion. However, once the threshold of competency is met, the Board must consider how much of a tendency a piece of evidence has to support a finding of the fact in contention. Not all competent evidence is of equal value. The Board finds the May 2014 VA opinions to be more probative than the appellant's statements. The examiner is a medical professional and was able to review the overall record, including the appellant's history and opinions.

There is no other evidence of a relationship between the appellant's current right ankle disability, right foot disability, bilateral knee disability, or bilateral wrist disability and service, and he has not alluded to the existence of any such evidence. The Board does acknowledge that the appellant has submitted medical literature pertaining to musculoskeletal injuries among military personnel (see article entitled Musculoskeletal Injuries in the Military Training Environment). However, generic medical literature which does not apply medical principles regarding causation or etiology to the facts of an individual case, does not provide competent evidence to satisfy the nexus element for an award of service connection. See Sacks v. West, 11 Vet. App. 314 (1998).

Also, as discussed above, the record fails to demonstrate any credible evidence of a continuity of symptomatology. Thus, the preponderance of the evidence is against a finding that the appellant's current right ankle disability, right foot disability, bilateral knee disability, or bilateral wrist disability are related to service, manifested in service, or were aggravated by service.

For the foregoing reasons, the preponderance of the evidence is against the appellant's claims. The benefit-of-the-doubt doctrine is therefore not helpful in this instance, and the claims of service connection for a right ankle disability, a right foot disability, a bilateral knee disability, and a bilateral wrist disability must be denied. See 38 U.S.C.A. § 5107(b); see also Gilbert v. Derwinski, 1 Vet. App. at 55-57.


ORDER

Entitlement to service connection for a right ankle disability is denied.

Entitlement to service connection for a right foot disability is denied.

Entitlement to service connection for a bilateral knee disability is denied.

Entitlement to service connection for a bilateral wrist disability is denied.


REMAND

The appellant contends that he has current bilateral hearing loss due to noise exposure from military weaponry while in the Army Reserve. He has specifically reported that he experienced immediate loss of hearing during live grenade training when a grenade detonated in close proximity to his position and he has alluded to the fact that hearing problems have continued since that time.

A VA audiologic examination was conducted in May 2014 and the appellant was diagnosed as having bilateral sensorineural hearing loss as defined by VA. See 38 C.F.R. § 3.385 (2014). The audiologist who conducted the examination opined that it was not likely ("less likely as not") that the appellant's hearing loss was caused or permanently aggravated by noise exposure from infantry training in service. She reasoned, in part, that the appellant did not report a specific incident or injury in service that caused his hearing loss and that there was no evidence of an injury in his service treatment records. Rather, he reported that all of the noise over several years caused his hearing loss (including both noise associated with military training and occupational noise exposure from working as a farmer).

The May 2014 opinion is insufficient because it is partly based on a lack of objective evidence of a specific injury in the appellant's service treatment records and the examiner did not acknowledge or discuss the appellant's reports of an immediate loss of hearing due to a grenade explosion and of an apparent continuity of symptomatology in the years since that incident. In this regard, a medical opinion is inadequate if it does not take into account the appellant's reports of symptoms and history (even if recorded in the course of the examination). Dalton v. Peake, 21 Vet. App. 23 (2007). Hence, a remand is necessary to obtain an addendum opinion as to the etiology of the appellant's hearing loss.

The appellant was also afforded a VA examination in May 2014 to assess the nature and etiology of any current left ankle disability. The examination report indicates that X-rays revealed degenerative or traumatic arthritis involving both ankles and that there was a left ankle posterior heel spur. However, the examiner subsequently concluded that there was no actual diagnostic findings for the left ankle. In light of this apparent inconsistency, a remand is also necessary to afford the appellant a new VA examination to assess the nature and etiology of any current left ankle disability.

Moreover, the May 2014 VA audiologic examination report refers to VA treatment for the appellant's hearing loss at the VA Medical Center in Sheridan, Wyoming (VAMC Sheridan). There are currently no VA treatment records included among the appellant's paperless records. Thus, it appears that there are VA treatment records that have not yet been obtained. Such records should be obtained on remand. 

Accordingly, the case is REMANDED for the following action:

1. Obtain all VA records of treatment, to specifically include:
(a) all records from VAMC Sheridan (see page 4 of the May 2014 VA audiologic examination report); and 
(b) all such records from any other sufficiently identified VA facility.
2. Then, refer the claims file to the May 2014 VA audiology examiner (or another qualified examiner, if unavailable) for preparation of an addendum opinion.

All relevant electronic records, including a copy of this remand along with any records obtained pursuant to this remand, must be sent to the examiner for review.

With respect to any hearing loss diagnosed since January 2007, the examiner shall answer the following questions:

(a) Is it at least as likely as not (50 percent probability or more) that the current hearing loss was caused by gunfire, explosions (including a sudden loss of hearing following a grenade explosion), and yelling experienced during Infantry training performed approximately two weeks per year from July 1968 to November 1977? For purposes of this question, please consider that during those years the appellant reported exposure to farm machinery and hunting without ear protection outside of Reserve service. Also, please address the June 20008 private physician's statement that the appellant's current hearing loss disability is due to "noise damage in the past."

(b) Is it at least as likely as not (50 percent probability or more) that the appellant's bilateral hearing loss was permanently aggravated beyond the normal course and scope of the disability by Infantry training performed approximately two weeks per year from November 1977 to July 1981?

In rendering these opinions, the examiner must not rely on the fact that the appellant's hearing was within "normal" limits for VA purposes, or non- ratable as per 38 C.F.R. § 3.385, at the time of separation from service, as the basis for any opinion provided, or it will be found inadequate. 

If the examiner is unable to provide an opinion without resort to speculation even with the parameters set forth above, then a thorough explanation as to why an opinion cannot be rendered should be provided.

3. Then schedule the appellant for a VA examination to assess the nature and etiology of any current left ankle disability. All indicated tests and studies shall be conducted. 

All relevant electronic records, including a copy of this remand along with any records obtained pursuant to this remand, must be sent to the examiner for review.
With respect to any left ankle disability diagnosed since January 2007, the examiner shall answer the following question:

Is it at least as likely as not (50 percent probability or more) that the current left ankle disability was caused by Infantry training performed approximately two weeks per year from July 1968 to July 1981?

In formulating the above opinion, the examiner must acknowledge and comment on any left ankle disabilities diagnosed since January 2007, the appellant's reports of his physical activities performed in the Army Reserve, and the X-ray findings of degenerative or traumatic arthritis involving the left ankle and a left ankle posterior heel spur documented in the May 2014 VA examination report.

A complete rationale shall be given for all opinions and conclusions expressed.

4. If a benefit sought on appeal remains denied, issue a supplemental statement of the case. After the appellant is given an opportunity to respond, the case shall be returned to the Board.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
S. BUSH
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs