﻿Citation Nr: 18142035
Decision Date: 10/15/18 Archive Date: 10/12/18

DOCKET NO. 14-28 376
DATE: October 15, 2018
ORDER
The claim for entitlement to service connection for diabetes mellitus, to include as secondary to service-connected disability, is denied.
FINDINGS OF FACT
1. The Veteran was not exposed to herbicide agents during active duty service.
2. Diabetes mellitus was demonstrated years after service, is not etiologically related to a disease or injury in service to include exposure to herbicide agents, and was not caused or aggravated by a service-connected disability. 
CONCLUSION OF LAW
Diabetes mellitus was not incurred in or aggravated by active service, nor may its incurrence or aggravation be presumed. 38 U.S.C. §§ 1110, 1112, 1116, 1131, 1137; 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310.
REASONS AND BASES FOR FINDINGS AND CONCLUSION
The Veteran served on active duty from November 1968 to November 1972 and from January 1973 to March 1978. This case comes before the Board of Veterans’ Appeals (Board) on appeal from an October 2011 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO).
This case was previously before the Board in July 2016 when the claim for entitlement to service connection for diabetes mellitus was reopened based on the receipt of new and material evidence. The reopened claim was then remanded for additional development. The case has now returned to the Board for further appellate action.
1. Entitlement to service connection for diabetes mellitus, to include as secondary to service-connected disability.
The Veteran contends that service connection is warranted for diabetes mellitus as it was incurred due to herbicide agent exposure during active duty service, or in the alternative, is secondary to service-connected pes planus. 
Service connection is granted for disability resulting from disease or injury incurred in or aggravated by active military service in the line of duty. See 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a relevant disease or an injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service” —the so-called “nexus” requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). See also Davidson v. Shinseki, 581 F.3d 1313 (Fed.Cir.2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed.Cir.2007). 
Service connection nonetheless may be granted for any disease diagnosed after discharge, when the evidence, including that pertinent to service, establishes the disease was incurred in service. 38 C.F.R. § 3.303(d). 
Service connection is also provided for a disability which is proximately due to, the result of, or aggravated by a service-connected disease or injury. 38 C.F.R. § 3.310; Allen v. Brown, 7 Vet. App. 439 (1995).
The Board concludes that while the Veteran has a current diagnosis of diabetes mellitus, he was not exposed to herbicide agents in the Republic of Vietnam or Thailand and the preponderance of the evidence weighs against a finding that the Veteran’s diabetes began during service or is otherwise related to an in-service injury or service-connected disability. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a), (d).
Turning first to the Veteran’s contentions regarding direct service connection, the record establishes a current diagnosis of diabetes mellitus. The condition was identified by the Veteran’s private and VA physicians throughout the claims period and was diagnosed by VA examiners in May 2004 and November 2016.
The Board must now determine whether the record demonstrates the presence of an in-service injury. Service treatment records are negative for complaints or treatment related to the Veteran’s endocrine system. All systems were normal at the November 1972 and December 1977 separation examinations and laboratory testing showed normal blood sugar levels. The Veteran also denied a history of sugar or albumin in his urine on the separation reports of medical history. Thus, service records do not indicate the incurrence of an injury during active duty. 
The Veteran contends that he was exposed to herbicide agents through his active duty service in Thailand and Vietnam. In December 2003 and April 2004 statements, the Veteran reported that he served as an administrative specialist in Thailand at Nakhon Phanom Royal Thai Air Force Base and spent a few months in Vietnam for a temporary duty assignment. Exposure to herbicide agents, including Agent Orange, is presumed if a veteran had service in the Republic of Vietnam between February 1961 and May 1975. 38 C.F.R. § 3.307(a)(6)(iii). “Service in the Republic of Vietnam,” includes service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam. 38 C.F.R. § 3.307(a)(6)(iii). The evidence must establish that that the Veteran actually stepped foot in Vietnam for the presumption to apply. See Haas v. Peake, 525 F.3d 1168 (2008); VAOPGCPREC 27-97.
The Veteran also reports exposure to herbicide agents through his active duty service in Thailand. He testified in May 2015 that while his service duties in Thailand were primarily administrative and clerical in nature, several times a week he was called to guard duty along the flight line near the inside perimeter of the base. 
In response to the Veteran’s contentions regarding herbicide exposure, the RO associated a copy of a memorandum addressing herbicide use in Thailand during the Vietnam era with the claims file. The memorandum includes reference to a report from Project CHECO (Contemporary Historical Examination of Current Operations) addressing the use of herbicides in Southeast Asia. The report did not find that tactical herbicides were used on allied bases in Thailand, but it did indicate sporadic use of non-tactical (commercial) herbicides within fenced perimeters. Therefore, if a veteran’s military occupational specialty (MOS) or unit was one which regularly had contact with the base perimeter, there was a greater likelihood of exposure to commercial pesticides, including herbicides. The memorandum also states that there is no presumption of “secondary exposure” based on being near or working on aircraft that flew over Vietnam or handling equipment once used in Vietnam. 
VA has adopted specific procedures to determine whether a veteran was exposed to herbicides in Thailand during the Vietnam era. VA’s Adjudication Procedures Manual, M21-1MR, directs that special consideration of herbicide exposure on a factual basis should be extended to veterans whose duties placed them on or near the perimeters of certain military bases in Thailand. See M21-1 MR, Part IV, Subpart ii, Chapter 1, Section H, Paragraph 5(a). Additionally, the M21- 1MR provides that several items of development should be performed in claims alleging herbicide exposure in Thailand, including considering the Memorandum on “herbicide Use in Thailand during the Vietnam Era;” notifying the Veteran appropriately concerning Thailand herbicide exposure; and if necessary, requesting verification of herbicide exposure from the United States Joint Services Records Research Center (JSRRC). See id; see also VBA Fast Letter 09-20, “Developing for Evidence of Herbicide Exposure in Haas-Related Claims from Veterans with Thailand Service during the Vietnam Era” (May 6, 2009).
After review of the record, the Board finds that the Veteran was not exposed to herbicides during active duty service. With respect to his contentions that he was briefly in Vietnam, service records are entirely negative for evidence that Veteran was ever present in Vietnam. Personnel records show that the Veteran served in Thailand, but there is no documentation or indication (to include temporary duty orders) that the Veteran was ever physically present in Vietnam. He is in receipt of the Vietnam Service Medal and the National Defense Service Medal, but these medals were awarded to personnel who served in-country and outside of Vietnam in support of operations. The U.S. Department of Defense Manual of Military Decorations and Awards shows that the criteria for receipt of these medals did not require actual duty or visitation in the Republic of Vietnam. Thus, the medals are not conclusive evidence of service in Vietnam. Additionally, in June 2004 the National Personnel Records Center (NPRC) stated that it was unable to determine whether the Veteran served in Vietnam and there was no record of his exposure to herbicides. The Board therefore concludes that the Veteran was not ever physically present in Vietnam during the applicable period and the presumption of exposure to herbicide agents does not apply.
Turning to the whether the Veteran was exposed to herbicides in Thailand, he does not allege and the record does not show that his regular duties placed him on or near the actual perimeter of a military base. His MOS during service was an administrative specialist. The duties associated with this MOS, as well as the Veteran’s service personnel evaluations, do not indicate regular contact with the base perimeter. The Veteran testified that he was called to guard duty several times a week to guard the aircraft on the flight-line, but this duty did not take place on or outside the actual perimeter of the base. There is nothing in the record to support the Veteran’s contentions that he was exposed to herbicide agents through his duties as an administrative specialist while serving in Thailand. Furthermore, while the Veteran is competent to attest to factual matters of which he has first-hand knowledge, such as observing the spraying of vegetation throughout the base in Thailand, the record does not establish his competency to identify the specific chemical composition of such substances. 
The Board therefore finds that the objective medical evidence in this case, to include the Veteran’s records and official reports from the service department, is more persuasive and probative regarding any potential herbicide agent exposure. The Board has considered the Veteran’s lay statements regarding his presence in Vietnam and his exposure to herbicides while in Thailand. However, the Board observes that the Veteran’s contentions are based on recollections of events that occurred decades before his claim for VA compensation was received. In addition, while the Veteran’s VA medical records note a past history of Agent Orange exposure, such as during an October 1988 Agent Orange registry examination, this history was recorded based solely on the Veteran’s lay statements and was made without review of the Veteran’s service records, personnel records, or reports from the service department. They are therefore of little probative value. See Boggs v. West, 11 Vet. App. 334 (1998); Kightly v. Brown, 6 Vet. App. 200 (1994); Reonal v. Brown, 5 Vet. App. 458 (1993).
The weight of the evidence therefore establishes that Veteran was not present in any capacity in Vietnam and his exposure to herbicides is not presumed. 38 U.S.C. § 1116; 38 C.F.R. § 3.307(a)(6)(iii). Similarly, the weight of the evidence establishes that the Veteran was not exposed to herbicides while on active duty in Thailand and service connection for any disability as directly due to herbicide exposure is also not possible. Combee v. Brown, 34 F.3d 1039, 1042 (Fed. Cir. 1994) (when the evidence does not warrant presumptive service connection, an appellant is not precluded from establishing service connection with proof of direct causation). 
Although the Veteran was not exposed to herbicides during active service, service connection is still possible for diabetes mellitus as a chronic disease. For veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic diseases, such as diabetes mellitus, are presumed to have been incurred in service if manifested to a compensable degree within one year of separation from service. 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307(a), 3.309(a). While the record clearly documents the presence of the claimed diabetes, there is no evidence that the condition manifested to a compensable degree within a year from the Veteran’s separation from service. The Veteran’s blood sugar was normal at the December 1977 separation examination and there is no lay or medical evidence of diabetes until April 1994, more than15 years after the Veteran’s discharge from service, when diabetes was diagnosed by a private physician. Therefore, service connection for the claimed condition on a presumptive basis as a chronic disease is not warranted. 
The Board has also considered whether there is any other evidence of a link between the Veteran’s diabetes and an incident of active duty service. He has not alleged any other service injury to account for his current diabetes, and service records are negative for any findings or symptoms of the disability. There is also no lay or medical evidence of the diabetes until many years after the Veteran’s separation from service. Finally, the record is negative for any competent medical evidence in support of the claims, to include any statements from the Veteran’s treating VA or private physicians. The only medical opinion of record, that of the November 2016 VA examiner, weighs against the claim for direct service connection. The Board must conclude that the preponderance of the evidence is against the claim and it is denied. 38 U.S.C. § 5107(b).
Turning to service connection on a secondary basis, there is no competent evidence of a link between the Veteran’s diabetes mellitus and his service-connected bilateral pes planus. The Veteran contends that the pain and limitation of function associated with pes planus aggravates his diabetes by impairing his ability to exercise and control his weight. The Veteran was provided a VA examination in November 2016 and the examiner provided an opinion weighing against secondary service connection. The examiner noted that the Veteran’s diabetes mellitus was in good control as evidenced by his laboratory test results and non-insulin dependent nature of the condition. Therefore, the pes planus had not resulted in any aggravation of the diabetes mellitus beyond its natural progression. The Board also notes that none of the Veteran’s treating physicians have identified a link between the Veteran’s pes planus and diabetes, to include due to aggravation.
The Board has considered the Veteran’s statements and testimony connecting diabetes to service and/or service-connected pes planus. However, the Veteran is not competent to opine as to medical etiology or render medical opinions. Barr v. Nicholson, 21 Vet. App. 303 (2007); see Grover v. West, 12 Vet. App. 109, 112 (1999). The Board acknowledges that the Veteran is competent to report observable symptoms, but finds that his opinions regarding whether his disability is etiologically related to active duty or a service-connected disability cannot be accepted as competent evidence in this case. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-1377 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1131, 1336 (Fed. Cir. 2006). 
The competent evidence of record is therefore against a nexus between the Veteran’s diabetes mellitus and any incident of active duty service, to include exposure to herbicide agents. Additionally, the evidence is against service connection for diabetes mellitus as secondary to service-connected pes planus. Accordingly, the Board must conclude that the preponderance of the evidence is against the claim for service connection and it is denied. 
 
M. H. HAWLEY
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD M. Riley, Counsel